UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

26CR100 ECT/DTS
**INDICTMENT**

v.

18 U.S.C. § 1349
18 U.S.C. § 2
18 U.S.C. § 1957

CHARLES WAYNE HEALEY,
KATHERIN SUZAN LARSEN-
GUTHMILLER,

Defendants.

**THE UNITED STATES GRAND JURY CHARGES THAT:**

At times relevant to this Indictment:

1.      Medicaid was a federal and state health care program that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota.

2.      Individuals who received benefits under Medicaid were referred to as "recipients" or "beneficiaries" (referred to as "beneficiaries" herein).

3.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965. Each state established and administered its own Medicaid program and determined the type, amount, duration, and scope of services covered within broad federal guidelines.

SCANNED
MAY 2 0 2026
U.S. DISTRICT COURT MPLS

*U.S. v. Healey, et al.*

4.      Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services rendered. Service providers were also required to maintain patient records verifying the provision of services. By submitting a claim, the provider certified, among other things, that the services were rendered to the patient, medically necessary, and not provided because of kickbacks or bribes.

5.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and as referenced in Title 18, United States Code, Section 1347.

6.      Within broad Federal guidelines, states developed home and community-based services waivers ("HCBS Waivers") to meet the needs of Medicaid beneficiaries receiving long-term care, services, and supports in their home or community, rather than in an institutional setting.

7.      In Minnesota, Medicaid was administered by the Minnesota Department of Human Services ("DHS").

**A.      Background on Minnesota's Individualized Home Supports Program**

8.      Beginning on or about January 1, 2021, through an HCBS waiver, DHS operated the Individualized Home Supports ("IHS") program ("the Program"), which was funded through the state's Medicaid program.

9.      The Program was intended to help beneficiaries with disabilities live as independently as possible in their communities.

2

*U.S. v. Healey, et al.*

10.    The Program provided support and training to beneficiaries receiving services through one of the following Medicaid waivers: brain injury, community access for disability inclusion, community alternative care, and developmental disabilities.

11.    The Program permitted reimbursements for support and/or training for the following four categories: (1) community participation; (2) health, safety, and wellness; (3) household management; and (4) adaptive skills.

12.    Because the Program was designed to help beneficiaries with disabilities live independently in their own or family homes, IHS services could only be provided in a home owned, rented, or controlled by the beneficiary or their family. Under Minnesota's Application for 1915(c) waiver, IHS services were explicitly disallowed in "a home or dwelling unit that the service provider owns, operates, or leases or in which the service provider has a direct or indirect financial interest." In addition, the Community Based Services Manual stated that "the IHS provider cannot have any direct or indirect financial interest in the property or house in which services are delivered."

13.    The Program had the following requirements for service providers: (1) a 245D license; and (2) enrollment with Minnesota Health Care Programs ("MHCP") to provide IHS services by submitting required forms. By signing the MHCP provider agreement, the provider agreed to, among other things: comply with all federal and state statutes and rules relating to the delivery of services to individuals and to the submission of claims for such services; and to assume full responsibility for the

3

*U.S. v. Healey, et al.*

accuracy of claims submitted to DHS according to the certification requirements of 42 C.F.R. § 455.18 and Minn. Stat. § 256B.27, subd. 2.

14.     The Program had the following requirements to enroll as a beneficiary: (1) live in their own home or their family's home; and (2) receive services through one of the following waivers: (a) brain injury; (b) community access for disability inclusion; (c) community alternative care; or (d) developmental disabilities.

15.     Once a beneficiary enrolled in the Program, their provider could start billing the Program for services rendered to the beneficiary.

16.     To submit claims for reimbursement, a provider was required to submit the name of the beneficiary serviced, the type of billable service provided, and the number of hours worked.

17.     IHS was considered a "direct contact service," as defined by Minn. Stat. § 245C.02, subd. 11. Individuals who provided direct contact services, including IHS services, were required to have a background study that satisfied the requirements of Minn. Stat. Ch. 245C.

**B.     The Defendants**

18.     Defendant CHARLES WAYNE HEALEY was the owner and operator of Charles W. Healey Foster Care, Inc. ("CWHFC") and Charles Healey Foster Home ("CHFH"), collectively, "Healey Homes."

19.     HEALEY formed CWHFC in the State of Minnesota in or around May 2015. HEALEY formed CHFH in the State of Minnesota in or around December 2023.

*U.S. v. Healey, et al.*

20.     Defendant KATHERIN SUZAN LARSEN-GUTHMILLER was an employee of CWHFC and the Executive Director of CHFH. She was also listed as a controlling individual on HEALEY's 245D DHS license for CHFH. She was listed as a Managerial Official for CWHFC on the Home and Community Based Services Provider Enrollment Application. On some documents, LARSEN-GUTHMILLER was also listed as a Managing Employee for CWHFC.

21.     DHS and Medicaid reimbursement payments for Healey Homes were deposited directly into a personal bank account held jointly by HEALEY and LARSEN-GUTHMILLER (account ending in 6852). HEALEY and LARSEN-GUTHMILLER regularly transferred Medicaid reimbursement funds from their x6852 account to a business bank account in the name of Charles W Healey Foster Home (account ending in 4297, hereinafter "Healey Homes business bank account"). The Healey Homes business bank account ending in 4297 was held jointly by HEALEY and LARSEN-GUTHMILLER.

22.     LARSEN-GUTHMILLER was the owner and operator of Briar Cliff Properties LLC ("Briar Cliff Properties"). LARSEN-GUTHMILLER formed Briar Cliff Properties in the State of Minnesota in or around May 2021. Briar Cliff Properties 2 was formed in the State of Minnesota in or around November 2022 by HEALEY's relative, Individual 1. Together, HEALEY, LARSEN-GUTHMILLER, Briar Cliff Properties, and Briar Cliff Properties 2 owned at least 20 residences where Healey Homes claimed to provide IHS services to Medicaid beneficiaries.

5

*U.S. v. Healey, et al.*

## C.    The Subject Properties

*Linton Residence*

23.    On or about August 24, 2020, HEALEY entered into a Contract for Deed for the purchase of the residence located at 417 S. Linton Street, Blue Earth, MN ("Linton Residence"). On or about April 6, 2021, HEALEY sold the Linton Residence to LARSEN-GUTHMILLER. From in or around January 2021 through in or around June 2025, Healey Homes received approximately $3,328,050 in Medicaid reimbursements for IHS services purportedly provided to ten beneficiaries at the Linton Residence.

*Rice Residence*

24.    On or about October 6, 2020, HEALEY and LARSEN-GUTHMILLER purchased the residence located at 120 Rice Street S., Blue Earth, MN ("Rice Residence"). In connection with the purchase of the Rice Residence, HEALEY provided an official bank check in the amount of $62,584.35 using funds from 1) the Healey Homes business bank account ending in 4297; 2) HEALEY and GUTHMILLER-LARSEN's personal account ending in 6852; and 3) an account in the name of Charles W Healey HELOC ending in 8336. On or about April 6, 2021, HEALEY transferred the Rice Residence to LARSEN-GUTHMILLER. From on or about January 1, 2021, to June 1, 2024, Healey Homes received approximately $1,980,931 in Medicaid reimbursements for IHS services purportedly provided to four beneficiaries at the Rice Residence.

*U.S. v. Healey, et al.*

*Nicollet Residence*

25.    On or about November 23, 2016, HEALEY purchased 619 N. Nicollet Street, Blue Earth, MN ("Nicollet Residence"). On or about April 6, 2021, HEALEY sold the Nicollet Residence to LARSEN-GUTHMILLER. From on or about March 29, 2021, to June 26, 2025, Healey Homes received approximately $1,099,244 in Medicaid reimbursements for IHS services purportedly provided to four beneficiaries at the Nicollet Residence.

*8th Street Residence*

26.    On or about June 14, 2021, LARSEN-GUTHMILLER and Briar Cliff Properties purchased 225 W. 8th Street, Blue Earth, MN ("8th Street Residence"). In connection with the purchase of the 8th Street Residence, HEALEY obtained an official bank check for $105,177.02 for the full purchase price from the Healey Homes business bank account ending in 4297. From on or about June 25, 2021, to June 26, 2025, Healey Homes received approximately $1,369,851 in Medicaid reimbursements for IHS services purportedly provided to three beneficiaries at the 8th Street Residence.

*2nd Street Residence*

27.    On or about August 16, 2021, LARSEN-GUTHMILLER and Briar Cliff Properties purchased 213 W. 2nd Street, Blue Earth, MN ("2nd Street Residence"). In connection with the purchase of the 2nd Street Residence, HEALEY withdrew $30,000 from his account ending in 6852 and $49,698 from the Healey Homes business account ending in 4297, which he combined into an official bank check for

*U.S. v. Healey, et al.*

$79,698, the full purchase price of the 2nd Street Residence. From on or about August 20, 2021, to June 26, 2025, Healey Homes received approximately $1,849,307 in Medicaid reimbursements for IHS services purportedly provided to one beneficiary at the 2nd Street Residence.

*4th Street Residences*

28.     On or about June 6, 2022, Briar Cliff Properties, LARSEN-GUTHMILLER, and HEALEY purchased two properties: 414 E. 4th Street, Blue Earth, MN, and 416 E. 4th Street, Blue Earth, MN ("4th Street Residences"). In connection with the purchase of the 4th Street Residences, HEALEY obtained an official bank check for $81,728.21 from the Healey Homes business bank account ending in 4297. From in or around July 2022 to August 2025, HEALEY made monthly mortgage payments for the 4th Street Residences from the Healey Homes business bank account ending in 4297. From on or about February 18, 2022, to on or about June 26, 2025, Healey Homes received approximately $2,526,016 in Medicaid reimbursements for IHS services purportedly provided to four beneficiaries at the 4th Street Residences.

*Meray Residence*

29.     On or about August 15, 2022, Briar Cliff Properties LLC purchased the residence located at 336 Meray Blvd, Mankato, MN ("Meray Residence"). In connection with the purchase of the Meray Residence, HEALEY made a down payment of $57,229.50 via check from the Healey Homes business bank account ending in 4297. From September 2022 to August 2025, HEALEY made monthly

8

*U.S. v. Healey, et al.*

mortgage payments for the Meray Residence using the Healey Homes business bank account ending in 4297. From on or about October 17, 2022, to June 26, 2025, Healey Homes received approximately $2,014,183 in Medicaid reimbursements for IHS services purportedly provided to two beneficiaries at the Meray Residence.

### *LeHillier Residence*

30.    On or about September 15, 2022, Briar Cliff Properties purchased 605 LeHillier Street, Mankato, MN ("LeHillier Residence"). In connection with the purchase of the LeHillier Residence, HEALEY made a down payment of $37,216 via check from the Healey Homes business bank account ending in 4297. From in or around October 2022 to August 2025, HEALEY made monthly mortgage payments for the LeHillier Residence from the Healey Homes business bank account ending in 4297. From on or about October 19, 2022, to June 26, 2025, Healey Homes received approximately $1,035,715 in Medicaid reimbursements for IHS services purportedly provided to one beneficiary at the LeHillier Residence.

### *3rd Street Residence*

31.    On or about January 18, 2023, Briar Cliff Properties purchased 223 W. 3rd Street, Blue Earth, MN ("3rd Street Residence"). In connection with the purchase of the 3rd Street Residence, HEALEY made a down payment of $90,953 via check from the Healey Homes business bank account ending in 4297. From on or about September 15, 2021, to on or about April 30, 2025, Healey Homes received approximately $1,173,107 in Medicaid reimbursements for IHS services purportedly provided to two beneficiaries at the 3rd Street Residence.

*U.S. v. Healey, et al.*

32.    Collectively, the properties identified in Paragraphs 23 through 31 are referred to herein as "the Subject Properties."

## D.    The Scheme to Defraud the IHS Program

33.    From in or around January 2021 through in or around September 2025, in the District of Minnesota and elsewhere, defendants CHARLES WAYNE HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER, and others, did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

34.    It was the purpose of the conspiracy for the defendants, CHARLES WAYNE HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER, to unlawfully enrich themselves by, among other things: (1) submitting and causing the submission of false and fraudulent claims for IHS services that were unnecessary, not provided as represented, and ineligible for Medicaid reimbursement; (2) concealing the submission of false and fraudulent representations, pretenses, promises, and claims to Medicaid, and the receipt and transfer of proceeds from the fraud; and (3) diverting proceeds of the fraud for the personal use and benefit of CHARLES WAYNE HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER and to further the fraud.

10

*U.S. v. Healey, et al.*

35.     The manner and means by which CHARLES WAYNE HEALEY, KATHERIN SUZAN LARSEN-GUTHMILLER, and others executed the scheme included, among other things, the following:

a.     HEALEY and LARSEN-GUTHMILLER owned, controlled, and operated Healey Homes.

b.     HEALEY and LARSEN-GUTHMILLER knew that the Program was designed to help beneficiaries with disabilities live independently in their own or family homes, and that they were prohibited from owning, operating or leasing the home/unit of the beneficiaries, or from having any direct or indirect financial interest in the beneficiaries' housing.

c.     From on or about January 1, 2021, to September 2025, HEALEY and LARSEN-GUTHMILLER gained access to  more than 25 vulnerable adult Medicaid beneficiaries by offering them housing owned and controlled by HEALEY and LARSEN-GUTHMILLER. HEALEY and LARSEN-GUTHMILLER, through Briar Cliff Properties, induced beneficiaries to live in the Subject Properties and other residences by offering below-market rent. In exchange for the receipt of below-market rent,  HEALEY and LARSEN-GUTHMILLER required beneficiaries to use Healey Homes as their Medicaid service provider. HEALEY and LARSEN-GUTHMILLER then submitted false and fraudulent claims to Medicaid for providing IHS services to these beneficiaries, even though Healey Homes was prohibited from billing for IHS

11

*U.S. v. Healey, et al.*

services that were provided in homes that were owned, controlled, or operated by Healey Homes.

d.       HEALEY and LARSEN-GUTHMILLER used the proceeds of the fraud and other monies to expand the scheme by purchasing the Subject Properties and other residences for the purpose of acquiring access to additional Medicaid beneficiaries, unlawfully providing IHS services to Medicaid beneficiaries living in the Subject Properties and other residences, and furthering the fraud.

e.       In order to conceal and disguise HEALEY and LARSEN-GUTHMILLER's financial interest in the Subject Properties, HEALEY falsely represented to DHS that he did not own any properties in which Healey Homes provided IHS services, and HEALEY and LARSEN-GUTHMILLER created, and caused the creation, of false and fraudulent documents showing the owner as LARSEN-GUTHMILLER, Briar Cliff Properties, or Briar Cliff Properties 2.

f.       HEALEY, LARSEN-GUTHMILLER, and others, knowingly and willfully submitted and directed others to submit claims to Medicaid for IHS services rendered to beneficiaries residing at the Subject Properties and other residences owned and controlled by HEALEY, even though HEALEY and LARSEN-GUTHMILLER had a direct and indirect financial interest in the properties.

g.       HEALEY and LARSEN-GUTHMILLER, by and through Healey Homes, submitted and caused the submission of DHS care plans for

*U.S. v. Healey, et al.*

beneficiaries that included more hours of care per day than the beneficiary needed, for the purpose of fraudulently billing Medicaid.

h.    HEALEY and LARSEN-GUTHMILLER, by and through Healey Homes, submitted and caused the submission of false and fraudulent claims to Medicaid for IHS services that were medically unnecessary, provided by employees (including T.W., G.F., and W.S.) who were disqualified from providing direct contact service because they failed background checks, or not provided as represented, including for services purportedly provided by the same employee to multiple beneficiaries at the same time, not provided in compliance with DHS rules, or not rendered to beneficiaries at all.

i.    From on or about January 1, 2021, to September 2025, HEALEY, LARSEN-GUTHMILLER, and others, by and through Healey Homes, billed Minnesota Medicaid approximately $22.7 million for IHS services purportedly provided to 26 beneficiaries when those services were, in fact, medically unnecessary, not provided as represented and ineligible for reimbursement. Minnesota Medicaid paid Healey Homes approximately $22.7 million based on those false and fraudulent claims.

j.    HEALEY and LARSEN-GUTHMILLER diverted over $1,000,000 of the fraud proceeds that Healey Homes obtained from Minnesota Medicaid for their personal use and benefit in luxury purchases, such as vehicles, including an Aston Martin, three Porsches, and three Teslas, and expensive jewelry, including five Rolex watches.

*U.S. v. Healey, et al.*

## Count 1
### (Conspiracy to Commit Health Care Fraud)

36.    Paragraphs 1 through 35 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

37.    Beginning in or around January 2021, through in or around September 2025, in the District of Minnesota and elsewhere, the defendants CHARLES WAYNE HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER, and others known and unknown to the Grand Jury, did knowingly and willfully conspire to execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of false and fraudulent claims to Medicaid, contrary to Title 18, United States Code, Section 1347, all in violation of Title 18, United States Code, Section 1349.

## Counts 2, 3, and 4
### (Money Laundering)

38.    On or about the dates set forth as to each count below, in the District of Minnesota, and elsewhere, as to the defendants set forth as to each count below, aided and abetted by, and aiding and abetting others known and unknown to the Grand Jury, did knowingly engage, and attempt to engage in, a monetary transaction affecting interstate and foreign commerce by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property

14

*U.S. v. Healey, et al.*

having been derived from a specified unlawful activity, that is, health care fraud, in violation of Title 18, United States Code, Section 1347:

| Count | Defendant | Description | Date | Amount |
|---|---|---|---|---|
| 2 | HEALEY | Check from Healey Homes bank account (x4297) for purchase of blue 2024 Porsche 718 Cayman | 7/23/2024 | $143,208.71 |
| 3 | HEALEY | Wire transfer from Healey Homes bank account (x4297) to an individual for the purchase of Acura NSX Coupe | 7/8/2025 | $120,000 |
| 4 | HEALEY LARSEN-GUTHMILLER | Online payment from Healey homes bank account (x4297) to Capital One Credit Card for purchases including $30,845 at Exclusively Diamonds, Mankato, MN for diamond earrings and Rolex watch | 7/12/2025 | $32,000 |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7), 18 U.S.C. § 981(a)(1)(A), 28 U.S.C. § 2461)

39.    The allegations contained in paragraphs 1–38 of this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture against defendants CHARLES HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER, pursuant to the provisions of Title 18, United States Code, Section 982, Title 18, United States Code, Section 981, and Title 28, United States Code, Section 2461.

15

*U.S. v. Healey, et al.*

40. Pursuant to Title 18, United States Code, Section 982(a)(7), upon being convicted of the crime charged in Count 1 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

41. Pursuant to Title 18, United States Code, Section 981(a)(1)(A), upon being convicted of any of the crimes charged in Counts 2, 3, and 4 of this Indictment, the convicted defendant shall forfeit to the United States any property, real or personal, involved in the commission of the offense, or any property traceable to such property.

42. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

43. Money Judgment: Property subject to forfeiture includes, but is not limited to, a forfeiture money judgment equal to total amount of forfeitable proceeds as a result of defendants' violations as alleged in Counts 1 through 4 of this Indictment.

44. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

*U.S. v. Healey, et al.*

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Sections 982(b), 981(a)(1), and/or Title 28, United States Code, Section 2461, to seek to forfeit any other property of CHARLES HEALEY and KATHERIN SUZAN LARSEN-GUTHMILLER, up to the value of such property.

**A TRUE BILL**

_____    _____

UNITED STATES ATTORNEY        FOREPERSON