**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CHARLES WAYNE HEALEY, and

KATHERINE SUZAN LARSEN-
GUTHMILLER

      Defendants.

Case No. 26-cr-100 (ECT/DTS)

**DEFENDANTS' JOINT MOTIONS**

Defendants Charles Wayne Healey and Katherine Suzan Larsen-Guthmiller, by and through their undersigned counsel, respectfully submit the following pretrial motions.

1.   *Motion for Discovery and for Brady Materials.*

    a.   <u>Requested Materials</u>.

The defendants request that the Court order the government to permit discovery, inspection, and copying (and to the extent it has not already, to obtain) the following from the Minnesota Department of Human Services (DHS):

        i.   Internal emails, memoranda, reports, and correspondence concerning the defendants and their associated entities discussed in the Indictment;

ii.    Communications among DHS employees regarding the services, billing, documentation, licensing, or funding practices described in the Indictment;

iii.    Audit files, compliance reviews, monitoring reports, site visit reports, and corrective-action records;

iv.    Notes of meetings, telephone calls, interviews, and conferences involving the defendants or the defendants' representatives;

v.    Communications between DHS and any federal agency relating to the allegations in this case;

vi.    Documents reflecting DHS approval, review, acceptance, or awareness of the practices alleged in the Indictment; and

vii.    Any material tending to show that DHS knew the facts that the government alleges were concealed or misrepresented.

This request is made pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment of the United States Constitution, and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

b.    <u>Background</u>.

The defendants are accused of submitting fraudulent claims for payment under the Individualized Home Supports Program, a *state* program administered by the Minnesota Department of Human Services. (Indict., ECF No. 1.)

The indictment was filed on May 20, 2026. (*Id.*) That same day, the Justice Department held a press conference announcing these charges and

others against 13 separate defendants.  *See, e.g.*, Kilat Fitzgerald and Howard Thompson, *Fraud in Minnesota: DOJ Announces Fraud Charges Against 15 People*, available at https://www.fox9.com/news/mn-fraud-doj-announces-fraud-charges-against-15-people-suspect-run.  Among those who spoke at the press conference were Health and Human Services Secretary Robert F. Kennedy, Jr., Medicaid Administrator Mehmet Oz, United States Attorney Daniel Rosen, and Assistant Attorney General Colin McDonald.  Also present were state officials, including the Superintendent of the Minnesota Bureau of Criminal Apprehension Drew Evans.



Fig. 1: Assistant AG McDonald, flanked by Secretary Kennedy and Dr. Oz, at the press conference. Superintendent Evans can be seen over Dr. Oz's left shoulder.

On May 21, 2026, Minnesota Attorney General Keith Ellison announced that the charges—including the instant indictment specifically—were the

result of a joint state and federal investigation. *See* AG Press Release, available at https://www.ag.state.mn.us/Office/Communications/2026/05/21_Medicaid-Fraud.asp. The headline of the State's press release was "Attorney General Ellison partners with federal law enforcement on indictments . . . FBI and HHS/OIG worked closely with AG Ellison's Medicaid Fraud Control Unit to investigate providers." *Id.* Attorney General Ellison discussed the "joint investigations," specifically stating that state "investigators participated in the investigations of Healy through interviews and data analysis." *Id.*

Attorney General Ellison partners with federal law enforcement on indictments of Housing Stabilization Services, Early Intensive Developmental and Behavioral Intervention, and Home and Community Based Services providers

FBI and HHS/OIG worked closely with AG Ellison's Medicaid Fraud Control Unit to investigate providers

Fig. 2: Attorney General Ellison's Press Release announcing the joint investigation.

Following the press conference, remarking upon the national initiative, Acting Attorney General Todd Blanche announced the following on the Justice Department's social media page: "This announcement marks the greatest combined federal and state effort in combating health care fraud IN HISTORY. Thanks to the leadership of @POTUS and @VP, and all the folks standing behind me, and next to me, we are more united than ever before."

@TheJusticeDept, X (formerly Twitter), June 23, 2026, available at

https://x.com/TheJusticeDept/status/2069438531823374519.



Fig. 3: Acting AG Blanche announcing the federal and state effort, flanked by Assistant AG McDonald, Secretary Kennedy, and Dr. Oz.

    c.    <u>Argument</u>.

The materials sought by the defendants are not merely relevant—they are crucial to the defense of this case. The defendants' theory of the case is straightforward: DHS knew, at every turn, of the material circumstances under which the defendants provided valuable services to vulnerable

5

Minnesotans. The defendants did not lie, conceal, or misrepresent material facts: to the contrary, they operated openly, with DHS's informed approval and active participation. Disclosure of the requested internal documents will establish that the defendants did not mislead the State of Minnesota, and that the State was fully aware of, and relied upon, the structure and framework of Healey Homes to deliver critical services to those who needed them most. The government therefore has a duty to obtain and disclose the materials pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure, the Due Process Clause of the Fifth Amendment, and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

      i.    *The materials are in the government's possession in this joint federal and state investigation.*

The law is unequivocal: the "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (referring to this duty as "inescapable"). That duty extends squarely to every member of the prosecution team—and DHS is one of them.

Questions to consider in delineating the prosecution team include "(1) whether the party with knowledge of the information is acting on the government's 'behalf' or is under its 'control'; (2) the extent to which state and federal governments are part of a 'team,' are participating in a 'joint

6

investigation' or are sharing resources; and (3) whether the entity charged with constructive possession has 'ready access' to the evidence." *United States v. Risha*, 445 F.3d 298, 304 (3d Cir. 2008)

In this case, the State of Minnesota is part of the prosecution team. State officials stood shoulder to shoulder with federal officials at the press conference announcing these charges. The Minnesota Attorney General acknowledged the existence of a "joint investigation." And the Acting Attorney General went further still, declaring the investigation "the greatest combined federal and state effort in combating health care fraud IN HISTORY." The government cannot now disclaim the very partnership it publicly celebrated.

Analysis of the *Risha* factors confirms that joint investigation. The discovery already provided shows that Minnesota DHS opened its books to federal agencies, providing hundreds of pages of documents. By all indications, DHS provided all documents requested, without objection or impediment. The same discovery shows that federal and state agents jointly conducted numerous interviews in furtherance of the investigation in this case. DHS is clearly working on the federal government's behalf in this case, sharing resources and providing ready access.

The defendants recognize that U.S. Magistrate Judge Tony N. Leung found no joint federal and state investigation in a prior federal fraud initiative. *United States v. Farah*, No. 22-CR-124 (NEB/TNL), 2023 WL 8757097, at *11

(D. Minn. Dec. 19, 2023).  But the facts before the Court in the instant case are distinguishable from that prior investigation.  The *Farah* prosecution took place in a prior era, under a different understanding of the governing standards of federal law enforcement. Times have changed and so has the relationship between state and federal authorities.

Under the current Administration's stated priorities,  the President and the Justice Department have made prosecutions of alleged fraud a centerpiece of their agenda—and have made no secret that Minnesota is squarely in their crosshairs.[1]  Beginning in February 2026, the White House  withheld hundreds of millions of dollars in matching Medicaid funds from the State of Minnesota, and  has  threatened  to  withhold  more  than  $2  billion  more,  based  on Minnesota's purported "noncompliance" with Medicaid oversight.   Dr. Oz stated, "We are able to identify enough concerns that it's caused us to defer $350 million to Minnesota."  Soyoung Kim, *Minnesota Medicaid funds won't be released   until   spending   is   justified*,   May   21,   2026   (available   at https://www.fox9.com/news/minnesota-medicaid-funds-wont-be-released-until-spending-is-justified).

---

[1] In a highly unusual departure from historical practice, the Acting Attorney General publicly thanked President Trump and Vice President Vance for their "leadership" in these fraud prosecutions. (Fig. 3, *supra*.) Traditionally the Justice Department maintained a level of distance from the White House to ensure independence, fairness, and political neutrality.  All politics aside, the Justice Department's departure from that practice underscores that circumstances have dramatically changed since the time of the *Farah* case.

Given that spotlight, the pressure on state agencies to obey the federal government cannot be overstated. The State itself told a federal court, in seeking injunctive relief, that the White House's actions—and its continued threat of future actions—will "cripple" the state budget and do "irreparable harm" to the State. *State of Minnesota v. Oz, et al.*, 26-CV-1701 (ECF No. 1). In this new political reality, Minnesota agencies face existential pressure to join and cooperate with federal investigators. The failure to do so will lead to devastating consequences, at the White House's direction.

Because this is a joint investigation, the government is obligated to produce these materials, which are as a matter of law already in its possession.

ii. *Even if the investigation were not joint, the government has an affirmative obligation to obtain this exculpatory material.*

Even if the Court were to conclude that DHS is not part of the prosecution team, the government still bears an affirmative obligation to obtain the requested exculpatory material. Regardless of the prosecution team's composition, prosecutors have a duty to disclose all exculpatory materials *of which they are actually aware. United States v. Robinson*, 809 F.3d 991, 996 (8th Cir. 2016) (emphasis added).

As outlined above, the defendants anticipate that disclosure of the requested internal documents will confirm that they did not mislead the State

9

of Minnesota, and that the State was aware of, and relied upon, the structure and framework of Healey Homes to provide crucial services.

The government is now on notice that exculpatory materials exist. The defendants request that the Court order the government to immediately obtain and disclose these documents, consistent with its obligations under the United States Constitution. Because the requested materials are exculpatory, and the government is now aware of their existence, the government has an affirmative obligation to obtain and disclose them.

2.    *Motion for Disclosure of Cooperating Witnesses.*

The defendants request that the Court direct the government to provide to the defendants information about any percipient witness, including cooperating witnesses.

The Supreme Court has long recognized that disclosure of informants and other witnesses may be "relevant and helpful to the defense of an accused," or may be "essential to a fair determination of the case." *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957). When that information is helpful, any interest the government may have in keeping it confidential "must give way" to the defendants' interest. *Id.* Defendants bear the burden of demonstrating that the disclosure of an informant's identity "is material to the outcome of his case; in other words, that disclosure is vital to ensure a fair trial." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001). "Where the

10

witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995); *accord United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987) ("The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required.").

This case involves vulnerable Minnesotans for whom the defendants provided care, including clients with cognitive and intellectual disabilities and clients facing significant mental health and emotional challenges. These clients' perceptions may have been influenced by or even wholly informed by these challenges. If the government relied on these clients' statements to secure an indictment, or intends to rely on their testimony at trial, the defendants are entitled to know now, so they have sufficient time to evaluate the reliability of that information.

Because "no fixed rule with respect to disclosure is justifiable," the decision to order disclosure varies with the particular circumstances of each case. *Id.* at 62. In a case involving a controlled buy of narcotics, or an informant in a violent conspiracy, disclosure may be a matter of weeks before trial. But in this case, the government has no interest in prolonging disclosure. The Court has recognized informant privilege to protect public safety—never to gain a tactical advantage. *Id.* at 59. Here there is no threat to public safety. This case involves no suspicion of acts of violence, intimidation, coercion, or

11

obstruction. To the contrary, the defendants dedicated their lives to helping vulnerable Minnesotans by providing critical in-home care services. And the defendants voluntarily agreed as a condition of release to have no contact with any potential witness, including former clients. The government therefore has no cause to delay providing this material information.

Because the information is material to the defense of this case, and because the government has no valid interest in refusing or prolonging disclosure, the defendants request that the Court order the government to immediately disclose the identities of all percipient witnesses in this case.

*Meet and Confer Statement.*

The undersigned have conferred with counsel for the government. The government opposes these motions.

Dated:  July 16, 2026                     By:  */s/ Thomas Calhoun-Lopez*
                                               Thomas Calhoun-Lopez (#0507078)
                                               LATHROP GPM LLP
                                               3100 IDS Center
                                               80 South Eighth Street
                                               Minneapolis, MN  55402
                                               Telephone:  612.632.3000
                                               thomas.calhoun-lopez@lathropgpm.com

                                               Attorney for Defendant
                                               Charles Wayne Healey

                                               —and—

12

Dated:  July 16, 2026

By:  */s/ Nicholas Scheiner*

Chad A. Blumenfield, Reg. No. 0387296
Nicholas Scheiner, Reg. No. 0402470
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
cblumenfield@greeneespel.com
nscheiner@greeneespel.com
(612) 373-0830

Samantha H. Bates, Reg. No. 0395002
225 South Sixth Street, Suite 2900
Minneapolis, MN 55402
Samantha.Bates@maslon.com
(612) 667-8200

Attorneys for Defendant
Katherine Suzan Larsen-Guthmiller

13